**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| **REGINALD EDWARD GREEN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-50357 |
| | ) | |
| **T. ROSS and NURSE STARR** | ) | Honorable Iain D. Johnston |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF REGINALD E. GREEN'S SECOND AMENDED COMPLAINT**

Plaintiff Reginald E. Green ("Green"), by and through his attorneys Forde & O'Meara LLP, for his second amended complaint ("complaint") against Defendant T. Ross ("Ross") and Defendant Nurse Starr ("Starr") (collectively "Defendants"), states as follows:

**INTRODUCTION**

1.      Plaintiff Green is a prisoner in the custody and care of the United States Bureau of Prisons ("BOP"). Defendants are medical professionals who work for the BOP. Plaintiff is HIV-positive, which Defendants knew. Yet Defendants wrongfully withheld from Green his prescription medicine, which was prescribed to Plaintiff to prevent him from developing AIDS. Defendants knew or should have known that withholding that medicine could lead Green to develop AIDS. And, while under the care of the BOP and Defendants, Green did develop AIDS as a result of Defendants' wrongfully withholding that medication.

**PARTIES**

2.      Plaintiff Reginald Green was an inmate at United States Penitentiary ("USP") Thomson, in Thomson, Illinois for just over a year, from July 24, 2019, to August 6, 2020. This case arises from events that occurred during his time at USP Thomson. He was previously an

1

inmate, from approximately August 20, 2012, to July 24, 2019, at USP Allenwood in Allenwood, Pennsylvania. He was then transferred to USP Thomson and then transferred again to USP Canaan in Waymart, Pennsylvania on August 6, 2020, and is currently an inmate there.

3. At all relevant times, Defendant T. Ross was a medical practitioner employed or otherwise retained by the BOP and/or USP Thomson and was working within the scope of her employment with the BOP and/or USP Thomson.

4. At all relevant times, Defendant Starr was a medical practitioner employed or otherwise retained by the BOP and/or USP Thomson and was working within the scope of her employment with the BOP and/or USP Thomson.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 2201.

6. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b) and 1346(b)(1), because all acts resulting in a violation of Plaintiff's rights occurred therein.

## FACTUAL ALLEGATIONS

*Plaintiff's Medical Situation*

7. When Green arrived at USP Allenwood in 2012, he submitted to a blood draw and test which revealed that Green tested positive for Human Immunodeficiency Virus ("HIV"), a condition that required medical attention.

8. Subsequent to his positive HIV test, Green was started on an antiretroviral therapy regimen by the medical care team at USP Allenwood which included use of the prescription drug Genvoya.

9. On or about July 24, 2019, Plaintiff was transferred from USP Allenwood to USP Thomson. During and after his transfer to USP Thomson, Green remained on the same or similar antiretroviral therapy regimen which included the use of the prescription drug Genvoya.

10. Green received his medication once daily, either in the morning or in the afternoon.

11. The purpose of Green's antiretroviral therapy regimen is to suppress viral reproduction of the HIV-1 virus and to prevent Green from developing AIDS (a/k/a Auto Immune Deficiency Syndrome).

12. At all relevant times, Green remained HIV positive and was routinely tested via blood draws which included HIV-1 tests every six months to monitor the state or progression, if any, of Green's HIV-positive status.

13. At all relevant times, Green was a federal inmate under the custody, protection, and medical care of the BOP.

14. During his incarceration at USP Allenwood and USP Thomson, Green's blood samples were always drawn in a private room where only Green and the BOP medical professional obtaining the samples were present.

15. From his HIV-positive diagnosis in 2012 through March 10, 2020, Green's blood was always drawn in the same and consistent manner as described in the preceding paragraph.

16. On or about March 10, 2020, Defendant Ross was a medical practitioner employed by the BOP at USP Thomson.

17. On or about March 10, 2020, Defendant Starr was a medical practitioner employed by the BOP at USP Thomson.

18.     On or about March 10, 2020, and in violation of BOP policy and procedure, Green was commanded to submit to a blood draw through the food slot on his cell door, rather than by the regular routine described above.

19.     On or about March 10, 2020, Green had a cellmate at USP Thomson who was present when Green was commanded by a BOP medical practitioner to submit to a blood draw through the food slot on his cell door rather than in a private room according to BOP policy and procedure.

20.     On or about March 10, 2020, Green refused to submit to having his blood drawn through the food slot on his cell door and in response to, and apparent retaliation for, Green's refusal, Ross intentionally withheld Green's antiretroviral therapy regimen medication.

*Defendants' Withholding of Plaintiff's Medication*

21.     On or about March 11 or 12, 2020, Nurse Starr came to Green's cell and asked him if he wanted his medication to which Green replied "yes" and started walking towards his cell door. Nurse Starr walked off without giving Green his antiretroviral / HIV medication.

22.     On March 12, Green submitted a "sensitive" BP-9 (Request for Administrative Remedy) to the Regional Director complaining that Defendant Ross and Nurse Starr were acting together in withholding Green's HIV therapy medication in retaliation for his refusal to submit to a blood draw through the food slot on his cell door.

23.     On or about March 23, 2020, Green met with Ross for a private medical consultation and Green asked Ross if could speak to a "qualified physician". In response, Ross terminated the consultation and returned Green to his cell.

24.     On or about March 29, Green submitted a "Request to Staff" to Ross indicating Green's willingness to submit to a blood draw. Green received no response, his blood was not drawn, and HIV therapy prescriptions were still being withheld.

*Plaintiff Contracts AIDS as a Result of Being Denied His Medication*

25.     On or about April 22, 2020, Green noticed that the lymph glands in his groin area were swollen and requested a medical examination by sending a "Request to Staff" to Ross.

26.     On or about April 30, Ross went to Green's cell and told Green that she would order his labs and blood draw.

27.     Green's blood was not drawn until May 19, 2020.

28.     On May 20, 2020, Green's HIV antiretroviral therapy regimen was resumed after 71 days of first being withheld by Ross. During that 71-day period, Green's HIV infection was unsuppressed and as a result, Green contracted AIDS.

29.     Upon information and belief, USP Thomson did not have a licensed physician for the period of at least March 23, 2020, to August 6, 2020.

30.     As a direct and proximate result of Ross' and Starr's deliberate indifference and/or intentional acts which resulted in the withholding of Green's antiretroviral therapy prescriptions, Green's serious medical condition had progressed from HIV-positive to AIDS. Green has also suffered other physical and mental injuries, emotional distress and mental anguish as a direct and proximate result of Ross and Starr's deliberate indifference and/or intentional acts.

## COUNT I
### (Against Defendant T. Ross)

**42 U.S.C. § 1331 and 2201: *Bivens* Action**

31.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 31 as and for this Paragraph 32.

32.     At all relevant times, Ross was acting under the color of law and within the scope of her employment with the Federal Bureau of Prisons.

33.     Ross denied and withheld from Green his antiretroviral therapy medication which Green was taking to manage and control his HIV-positive condition.

34.     Ross, as medical practitioners employed by the BOP and working at USP Thomson, knew or should have known of the proper procedures, policies, and safety standards for blood draws from inmates housed at the BOP.

35.     Ross, as medical practitioners employed by the BOP and working at USP Thomson were personally involved in Green's medical care and knew or should have known that Green was HIV positive and required his daily antiretroviral therapy medication to control and/or suppress his HIV infection.

36.     Ross, as medical practitioners employed by the BOP and working at USP Thomson, knew or should have known the risk of serious health implications for Green by withholding his antiretroviral therapy medications.

37.     Ross' failure to follow proper procedure for the blood draw and subsequent denial of Green's necessary medication for his HIV positive condition represents a systematic failure of the BOP.

38.     Ross, in her role as a medical practitioner at USP Thomson, intentionally disregarded a known risk to Green's health by failing to provide adequate medical care for Green's objectively and sufficiently serious medical condition (i.e., HIV-positive status) by withholding or otherwise denying Green access to his prescribed antiretroviral therapy regimen.

39.     Ross showed deliberate indifference to Green's serious health condition, constitutional rights, medical needs and injuries and as a direct and proximate result, Green has

6

suffered serious permanent and life-threatening physical, mental and psychological injuries including, but limited to Green's development of AIDS.

WHEREFORE, Plaintiff REGINALD E. GREEN, respectfully requests this Court enter judgment in his favor and against Defendant T. Ross as follows:

A. Awarding him compensatory damages for his physical, mental and psychological injuries in an amount to be determined by a jury;

B. Awarding him punitive damages.

C. An award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988, or any other applicable law; and

D. Any other relief this Court deems equitable and just under the circumstances.

## COUNT II
### (Against Defendant Nurse Starr)

### 42 U.S.C. § 1331 and 2201: *Bivens* Action

40. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 31 as and for this Paragraph 40.

41. At all relevant times, Starr was acting under the color of law and within the scope of their employment with the Federal Bureau of Prisons.

42. Starr denied and withheld from Green his antiretroviral therapy medication which Green was taking to manage and control his HIV-positive condition.

43. Starr, as medical practitioners employed by the BOP and working at USP Thomson, knew or should have known of the proper procedures, policies, and safety standards for blood draws from inmates housed at the BOP.

44. Starr, as medical practitioners employed by the BOP and working at USP Thomson were personally involved in Green's medical care and knew or should have known that Green was

HIV positive and required his daily antiretroviral therapy medication to control and/or suppress his HIV infection.

45.     Starr, as medical practitioners employed by the BOP and working at USP Thomson, knew or should have known the risk of serious health implications for Green by withholding his antiretroviral therapy medications.

46.     Starr's failure to follow proper procedure for the blood draw and subsequent denial of Green's necessary medication for his HIV positive condition represents a systematic failure of the BOP.

47.     Starr, in her role as a medical practitioner at USP Thomson, intentionally disregarded a known risk to Green's health by failing to provide adequate medical care for Green's objectively and sufficiently serious medical condition (i.e., HIV-positive status) by withholding or otherwise denying Green access to his prescribed antiretroviral therapy regimen.

48.     Starr showed deliberate indifference to Green's serious health condition, constitutional rights, medical needs, and injuries and as a direct and proximate result, Green has suffered serious permanent and life-threatening physical, mental, and psychological injuries including, but limited to Green's development of AIDS.

WHEREFORE, Plaintiff REGINALD E. GREEN, respectfully requests this Court enter judgment in his favor and against Defendant Nurse Starr as follows:

A.     Awarding him compensatory damages for his physical, mental, and psychological injuries in an amount to be determined by a jury;

B.     Awarding him punitive damages.

C.     An award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988, or any other applicable law; and

D.     Any other relief this Court deems equitable and just under the circumstances.

Dated:  November 10, 2021                          by:      */s/ Radhika V. Lohia*

                                                           Attorney for Plaintiff,
                                                           Reginald E. Green

Radhika V. Lohia
Brian O'Meara
Forde & O'Meara LLP
191 N. Wacker Drive, 31st Floor
Chicago, Illinois 60606
312-465-4776
rlohia@fordellp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2021, I electronically filed the foregoing Plaintiff, Reginald E. Green's Second Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Monica Mallory
U.S. Attorney's Office
327 South Church Street
Suite 3300
Rockford, IL  61101


By:     /s/ Radhika V. Lohia