IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| REGINALD EDWARD GREEN, <br><br> Plaintiff, <br><br> v. <br><br> T. ROSS AND NURSE STARR, <br><br> Defendants. | Case No. 3:20-cv-50357 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Defendants Nurse Teresa Ross and Nurse Linda Starr, two medical practitioners at United States Penitentiary Thomson, knew that their inmate Reginald Green was an HIV-positive individual, knew Mr. Green took antiretroviral medication to prevent his HIV infection from progressing to AIDS, and knew that without the medication, Mr. Green's HIV infection could progress to AIDS.[1] Dkt. 34, at ¶¶ 35, 36, 44, 45. Yet, because Mr. Green refused to submit to a blood draw through the food slot of his cell door, Nurse Ross and Nurse Starr withheld Mr. Green's antiretroviral medication, and Mr. Green developed AIDS.

Mr. Green now brings a two-count *Bivens* action against Nurse Ross and Nurse Starr. Dkt. 34. Nurse Ross and Nurse Starr moved to dismiss the claims under Federal Rule of Civil Procedure 12(c). Dkt. 75. They argue that Mr. Green's *Bivens*

---

[1] At this stage in the proceeding, the facts alleged in the complaint are taken as true. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)).

1

claims fail because they "require the court to imply a new cause of action for damages while the Supreme Court has made it clear . . . that expanding the judicially created *Bivens* remedy to cover previously unrecognized claims is disfavored." Dkt. 76, at 1. The Court disagrees. Allowing Mr. Green's claims to proceed does not improperly expand the *Bivens* remedy to a new, unrecognized context. Indeed, there are no meaningful differences between Mr. Green's claims and the claim that the Supreme Court recognized in *Carlson v. Green*, 446 U.S. 14 (1980). Thus, the Court denies Nurse Ross and Nurse Starr's Motion to Dismiss. Dkt. 75.

## STATEMENT OF ALLEGATIONS

Mr. Green is an HIV-positive inmate formerly incarcerated at USP Thomson.[2] Dkt. 34, at ¶¶ 1, 2. Mr. Green took an antiretroviral therapy regimen to suppress the virus and prevent Mr. Green from developing AIDS. *Id.* at ¶¶ 8–11. To monitor the "state or progression" of his HIV infection, Mr. Green "routinely" had his blood drawn. *Id.* at ¶ 12. Mr. Green alleges that his blood was "always" drawn in a "private room," where only he and medical professionals were present. *Id.* at ¶¶ 14–15. In a departure from "BOP policy and procedure," on March 10, 2020, Mr. Green was asked to submit to a blood draw through the food slot on his cell door. *Id.* at ¶¶ 18–19. Mr. Green refused, and, allegedly in "retaliation" for refusing the blood draw, Nurse Ross "intentionally withheld" Mr. Green's antiretroviral medication. *Id.* at ¶ 20.

A day or two later, Nurse Starr went to Mr. Green's cell and asked Mr. Green if he wanted his medication. *Id.* at ¶ 21. Mr. Green said "yes," but Nurse Starr

---

[2] Mr. Green is now incarcerated at USP Canaan in Waymart, Pennsylvania. Dkt. 34, at ¶ 2.

"walked off" without providing the antiretroviral medication. *Id.* Mr. Green then submitted a "Request for Administrative Remedy" to the "Regional Director," complaining that Nurse Ross and Nurse Starr were withholding Mr. Green's antiretroviral medication in retaliation for refusing to allow his blood to be drawn through the food slot in his cell door. *Id.* at ¶ 22.

On March 23, 2020, Mr. Green met with Nurse Ross for a "private medical consultation," and Mr. Green asked to speak to a "qualified physician." *Id.* at ¶ 23 (internal quotations omitted). Nurse Ross ended the consultation and returned Mr. Green to his cell. *Id.*

Within a week, Mr. Green submitted a "Request to Staff" to Nurse Ross, indicating that Mr. Green was willing to submit to a blood draw, but received no response. *Id.* at ¶ 24. All the while, Mr. Green's medication was being withheld. *Id.*

Approximately three weeks later, on April 22, 2020, Mr. Green "noticed that the lymph glands in his groin area were swollen" and sent another Request to Staff to Nurse Ross, requesting a medical examination. *Id.* at ¶ 25. On April 30, 2020, Nurse Ross told Mr. Green that she would order his labs and blood to be drawn. *Id.* at ¶ 26. Mr. Green's blood was ultimately drawn on May 19, 2020, and on May 20, 2020, his "HIV antiretroviral therapy regimen was resumed." *Id.* at ¶¶ 27–28. The delay was not without consequence: during that 71-days that Mr. Green was without his medication, Mr. Green's "HIV infection was unsuppressed, and, as a result, [Mr.] Green contracted AIDS." *Id.* at ¶ 28.

3

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014).

Federal Rule of Civil Procedure 8 requires only that a plaintiff's complaint contain a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as prayer for the relief sought. Fed. R. Civ. P. 8(a). According to the Supreme Court, this means that the complaint's factual assertions, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Reasonable inferences are drawn in favor of the plaintiff. *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The defendant, as the moving party, bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## ANALYSIS

In 1971, the Supreme Court recognized an implied cause of action against federal law enforcement officials for violating the Fourth Amendment. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). In doing so, the Supreme Court explained that courts must "adjust their remedies so as

4

to grant the necessary relief" when "federally protected rights have been invaded." *Id.* at 392, 397 (internal citations and quotations omitted).

Over the half-century since then, the Court has "adopted a far more cautious course before finding implied causes of action." *Ziglar v. Abbasi*, 520 U.S. 120, 131–32 (2017). It has only found implied causes of action in two other contexts. First, in 1979, it recognized a Fifth Amendment employment-discrimination claim against a Congressman. *Davis v. Passman¸* 442 U.S. 228 (1979). Second, in 1980, it recognized an Eighth Amendment prisoner mistreatment claim for failure to provide medical care. *Carlson v. Green*, 446 U.S. 14 (1980).

Evidently, the "recognition of implied claims against federal officials based on *Bivens* was a slow-moving vehicle." *Sargeant v. Barfield*, No. 19 CV 50187, 2021 U.S. Dist. LEXIS 113597, at *1 (N.D. Ill. June 17, 2021). But in 2017, the Supreme Court "not only slammed the brakes, but also put the vehicle in neutral while apparently thinking about throwing it into reverse." *Sargeant*, 2021 WL 2473805, at *1. The Supreme Court cabined its rationale in finding implied causes of action to a bygone "*ancien regime*." *Abbasi*, 582 U.S. at 131. Indeed, the Supreme Court "came to appreciate more fully the tension" between finding implied causes of action and "the Constitution's separation of legislative and judicial power." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). "[W]hen a court recognizes an implied claim for damages on the ground that doing so furthers the 'purpose' of the law, the court risks arrogating legislative power." *Id.* The "watchword" is now "caution," and expanding *Bivens* remedies has become a "disfavored judicial activity." *Id.* at 742 (internal quotations

5

and citations omitted). The Supreme Court has repeatedly "rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 742–43 (collecting nine cases).

In making sure the Court does not improperly expand the *Bivens* remedy, the Court must engage in a two-step inquiry. First, the Court must determine whether the claim "presents a new *Bivens* 'context.'" *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 561–62 (7th Cir. 2022) (quoting *Abbasi*, 582 U.S. at 148)). "[T]he universe of circumstances considered 'new' is intended to be broad, so that the facts alleged will constitute a new context if they are 'different in a meaningful way from previous *Bivens* cases.'" *Liggins v. O'Sullivan*, No. 3:19-cv-50303, 2022 U.S. Dist. LEXIS, at \*9 (N.D. Ill. Mar. 15, 2022) (quoting *Hernandez*, 140 S. Ct. at 743). A claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.

If the claim does arise in a new context, the Court must then decide whether there are "special factors counseling hesitation" in allowing the claim to go forward. *Abbasi*, 582 U.S., at 136; *Greenpoint Tactical Income Fund LLC*, 38 F.4th at 561–62. The "focus" of this inquiry is "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S., at 136; *Greenpoint Tactical Income Fund LLC*, 38 F.4th at 561–62.

6

Because Mr. Green alleges a violation of his Eighth Amendment rights, the Fourth and Fifth Amendment cases, *Bivens* and *Davis*, offer no refuge. Rather, Mr. Green must hang his hat on *Carlson*.

In *Carlson*, the estate of a deceased prisoner alleged that prison officials, "being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of [the decedent's] chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." 446 U.S. at 16 n. 1.

The Court finds that Mr. Green's brings his Eighth Amendment claim within the same context as *Carlson*. Both claims arise from the denial of medical care of a pre-existing, chronic condition of which the defendants were aware. *See* 446 U.S. at 16 n. 1; Dkt. 34, at ¶ 13, 35, 36, 44, 45. The same constitutional right is at issue, *i.e.*, the Eighth Amendment's prohibition on cruel and unusual punishments and the denial of medical treatment in prison. *See* 446 U.S. at 16; Dkts. 34, 79. The judicial guidance on such claims is firmly established; the Supreme Court "has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" *Abbasi*, 582 U.S. at 148 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In *Carlson*, the plaintiff's Eighth

7

Amendment claim arose from the denial of treatment for asthma, while Mr. Green's claim arises from the denial of treatment for HIV. 446 U.S. at 16 n. 1; Dkt. 34, at ¶¶ 35, 36, 44, 45.

And, to be sure, the medical practitioners did initially withhold the medication because of Mr. Green's own actions; namely, Mr. Green's refusal to submit to a blood draw through the food slot of his door. Dkt. 34, at ¶ 20. The Court views this difference as trivial because, even after Mr. Green indicated he was willing to submit to a blood draw, his blood was not drawn and his medication was not resumed until nearly two months later. *Id.* at ¶¶ 24–25. By that point, Mr. Green's HIV infection had progressed to AIDS. *Id.* at ¶ 28.

The Court is on good footing in recognizing that Mr. Green's claims concerning Nurse Ross and Nurse Starr's failure to treat Mr. Green's HIV infection do not improperly extend the *Bivens* remedy to a new context. See *Rodriguez v. Ahmed*, No. 20-cv-01236-JPG, 2023 U.S. Dist. LEXIS 11289, at *4 (S.D. Ill. Jan. 23, 2023) (failure to treat a scalp condition, hernia, back injury, diabetes, and elevated liver enzymes and instead proposing suicide was not a new context); *Hammack v. Schneider*, No. 19-cv-00230-JPG, 2023 U.S. Dist. Lexis 4483, at *9–10 (S.D. Ill. Jan. 10, 2023) (failure to treat hand condition, Dupuytren's Contracture, resulting in loss of use was not a new context) *Blackstone v. Ortiz*, No. 16-86000 (RBK) (JS), 2018 U.S. Dist. LEXIS 78945, at *3 (D.N.J. May 9, 2018) (failure to treat umbilical hernia was not a new context); *Stile v. United States*, No. 17-2693 (RMB), 2017 U.S. Dist. LEXIS 174953, at *11–12 (D.N.J. Oct. 23, 2017) (failure to treat chronic bacterial infections was not

8

a new context). And because Mr. Green's are not brought under a new context, the Court need not engage with whether there are "special factors counseling hesitation" in allowing his claims to go forward. *Abbasi*, 582 U.S., at 136; *Greenpoint Tactical Income Fund LLC*, 38 F.4th at 561–62.

## CONCLUSION

For the foregoing reasons, Nurse Ross and Nurse Starr's Motion to Dismiss [75] is denied.

Date: May 15, 2023

_____
Honorable Iain D. Johnston
United States District Judge